FILED
SUPERIOR COURT
OF GUAM

2022 JUL 20 AM 11: 58

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO.: CF0564-20 |
| vs. | **DECISION AND ORDER**<br>*Defendant's Motion to Reconsider Re*<br>*People's Motion in Limine to Admit*<br>*Rule 413 Evidence* |
| FRANK JAMES SAN NICOLAS,<br>DOB: 06/21/1970 | |
| Defendant. | |

## **INTRODUCTION**

This matter came before the Honorable Arthur R. Barcinas on July 11, 2022, for a hearing on Defendant's Motion to Reconsider Re People's Motion in Limine to Admit Rule 413 Evidence. Present at the hearings were: Defendant Frank San Nicolas ("Defendant") with Counsel Joaquin Arriola Jr., and Assistant Attorney General Richelle Y. Canto for the People. Upon review of the pleadings, record, and the applicable law, the Court hereby **GRANTS** Defendant's Motion as it relates to R.L., and **DENIES** Defendant's Motion as it relates to C.T. As such, C.T. is allowed to testify as a witness under GRE 413.

## BACKGROUND

This case arises from an Indictment returned by the grand jury on October 29, 2020, charging Defendant with the following: THIRD DEGREE CRIMINAL SEXUAL CONDUCT (As a Second Degree Felony), and FOURTH DEGREE CRIMINAL SEXUAL CONDUCT (As a Misdemeanor) 2 counts. Jury Selection commenced on June 22, 2022, and a petite jury was sworn in on June 23, 2022.

On June 29, 2022, through July 6, 2022, Victim testified and was later excused. The People then called C.T. as their next witness. At that time, Defense made an oral motion for the Court to reconsider its decision in its Findings of Fact and Conclusions of Law on the People's Motion in Limine to Admit Rule 413 Evidence ("June 14, 2022, FFCL"), which effectively allow R.L. and C.T. to testify under GRE 413. *See* FFCL (Jun. 14, 2022). The Court then allowed Defense to file his written Motion for Reconsideration by June 7, 2022, and for the People to file their Opposition the following day, June 8, 2022. A hearing on the subject motion was held on June 11, 2022, at 10a.m.

## DISCUSSION

### I. MOTION FOR RECONSIDERATION

The Guam Local Rules CR 1.1 set forth the standard for a motion for reconsideration:

> A motion may be renewed only on the grounds of (1) a material difference in fact or law from that presented to the court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (2) *the emergence of new material facts* or change of law occurring after the time of such decision, or (3) a manifest showing of a failure to consider material facts presented to the court before such decision.

Local Rule CR 1.1 (emphasis added). Before the Court's FFCL was issued, the Court was only able to consider certain discovery provided by the People, which included the police report and Victim's written statement therein, due to the fact that Victim was not on island. At trial, Victim

provided further descriptions and explanations of what was previously provided by the Court when it made its initial decision in its June 14, 2022, FFCL. In light of Victim's more detailed descriptions and explanations, the Court hereby reconsiders its decision in its June 14, 2022, FFCL, under CR 1.1(2). *See* Local Rule CR 1.1(2). Therefore the Court's analysis turns on whether Victim's testimony provides new material facts what would change the Court's decision to allow R.L. and C.T. to testify under GRE 413.

## II. RELEVANCE (GRE 401 & 402)

The Court's analysis of admissibility begins with whether the evidence is relevant. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. GRE 401. A fact is of consequence when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict. *United States v. Begay*, 497 F. Supp.3d 1025, 1051 (D.N.M. 2020). Generally, all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Organic Act, by the laws of Guam, by these Rules or other rules prescribed by the Supreme Court of Guam pursuant to statutory authority. Irrelevant evidence is not admissible. GRE 402. "It is generally accepted that a defendant with the propensity to commit *acts similar to those charged* is more likely to have committed the charged act than another and therefore such evidence is *relevant*." *Guam v. Chinel*, 2013 Guam 24 ¶ 28 (emphasis added); quoting *Doe ex rel. Rudy–Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000). Further, evidence is more likely to overcome the threshold question of relevancy when it provides detail and specifics about the similar acts. Therefore, the question

becomes whether the testimony of R.L. and C.T. is relevant to prove the charges against Defendant in the instant case.

Defendant argues that "R.L. and C.T.'s testimony offers nothing probative of consent. *Modus operendi* is not relevant as there is no allegation or defense that someone other than Defendant may have committed the criminal acts alleged. Lack of mistake is not relevant as mistake has not been raised as a defense." Def's Mot. for Reconsid. p.5 (Jul. 7, 2022).

Defendant's argument does not change the Court's analysis that R.L. and C.T.'s testimony is relevant. Defendant's argument interprets the standard for relevance narrowly as he asserts that R.L. and C.T.'s testimony is not relevant to prove consent or lack thereof, *modus operendi*, and lack of mistake. However, threshold for relevance is minimally stringent, and it only requires that the purported evidence have the tendency to make the existence of a fact, that is of consequence of the determining action, more or less probable than it would be without such evidence. Further, no new material facts were revealed in Victim's testimony that would alter the Court's analysis as it relates to the relevance of R.L. and C.T.'s testimony. R.L. and C.T.'s testimony have the tendency to make the fact that Defendant committed the committed the charges brought against him than it would be without their testimony. As such, the Court still finds that R.L. and C.T.'s testimony is relevant. *See* FFCL p. 12 (Jun. 14, 2022).

## III. EVIDENCE OF SIMILAR CRIMES IN CRIMINAL SEXUAL CONDUCT CASES (GRE 413)

Generally, evidence of past crimes could be admitted for certain purposes, but such evidence is barred if introduced to "prove the character of a person in order to show that he acted in conformity therewith." *Chinel*, 2013 Guam 24 ¶ 21; quoting GRE 404(b) sourced from Fed. R. Evid. 404(b). In 1994, Congress made a fundamental exception to this rule by enacting the Federal Rules of Evidence ("FRE") Rule 413. *Id.* The purpose of the new rule "was to

supersede Rule 404(b)'s prohibition on evidence of like conduct showing propensity in alleged sexual assault cases." *Id.*; quoting *Martinez v. Chui*, 608 F.3d 54, 59 (1st Cir. 2010). In other words, the purpose of Rule 413 "was to specifically permit such evidence to show *propensity*." *Id.* at ¶ 28 (emphasis added). In 2006, Guam enacted its own GRE 413, which is sourced from FRE 413, through a Supreme Court Promulgation Order. *Id.* at ¶ 22; *Re: Adoption of the 2006 Guam Rules of Evidence*, PRM06-001 (Jan. 1, 2006). GRE 413 states in part:

> a) In a criminal case in which the defendant is accused of an offense of criminal sexual conduct, the evidence of the defendant's commission of another offense or offenses of criminal sexual conduct is admissible and may be considered for its bearing on any matter to which it is relevant.

GRE 413(a); *see* also *People v. Ehlert*, 2019 Guam 3 ¶ 23 ("Under GRE 413, like its federal counterpart, evidence of prior sexual misconduct may be admitted to infer the defendant's propensity to commit the charged acts.")

In determining whether a prior offense of conduct is admissible under GRE 413, the Guam Supreme Court has adopted the test used by the federal courts, which includes the following threshold requirements:

> 1) The present case must include criminal sexual conduct charges,
> 2) The evidence proffered must be evidence of the defendant's commission of another past act of alleged sexual assault, and
> 3) The past act must be relevant.

*Chinel*, 2013 Guam 24 ¶¶ 25-26; *see* also *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998). No new material facts were revealed in Victim's testimony that would alter the Court's analysis as it relates to the satisfaction of the GRE 413 threshold requirements. *See* FFCL pp. 12 – 15 (Jun. 14, 2022).

## IV. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME (GRE 403)

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Chinel*, 2013 Guam 24 ¶ 33; citing 6 GCA § 403. Therefore, to be admissible, the R.L. and C.T.'s testimony must overcome GRE 403. In determining whether 413 evidence overcomes GRE 403 the Guam Supreme Court suggests that the trial courts apply the *LeMay* test, which examines the following:

1) The similarity of the prior acts charged;
2) The closeness in time of the prior acts to the acts charged;
3) The frequency of the prior acts;
4) The presence or lack of intervening circumstances; and
5) The necessity of the evidence beyond the testimonies already offered at trial.

*Chinel*, 2013 Guam 24 ¶ 39; *LeMay*, 260 F.3d at 1027-28 (9th Cir. 2001). However, this list of factors is not exhaustive or mandatory, and the trial courts retain flexibility to consider such other factors as are relevant to the cases before them. *Id.* Trial courts may consider additional factors that would help them resolve the cases, or they may ignore any of the *LeMay* factors that are irrelevant. The Supreme Court expressed that the *LeMay* factors are meant as guidance rather than benchmarks. *Id.* The Court's analysis does not change as it relates to the *LeMay* factors (2) through (5). As such, the Court only addresses the first factor—the similarity of the prior acts charged.

### 1) Similarity of the Prior Acts Charged

Similar acts must be established by sufficient evidence to support a finding by the jury that the defendant committed the similar act. Before analyzing the factor of similarity, the Court finds it necessary to lay out the relevant testimony of Victim, R.L., and C.T.

Here, Victim testified at trial that:

1) [She] knew Defendant as a *suruhanu*; *See* Min. Entry 10:08:54AM (Jul. 01, 2022).

2) Defendant told [her] that she had a **"warrior spirit"** and a **"*maga haga* energy"** *See* Min. Entry 10:36:42AM (Jul. 01, 2022).

3) [She] had a strong impulse to leave home and go to **Tanguisson**. *See* Min. Entry 10:55:50AM (Jul. 01, 2022). [Defendant] asked [her] what [she] was doing there and [she] told him, oh **[she's] here to connect with the ancestors**. *See* Min. Entry 11:00:10AM (Jul. 01, 2022). [Defendant] told [her] that the ancestors wanted him to take [her] to this cave to meet the *maga haga*. *See* Min. Entry 10:40:03AM (Jul. 01, 2022). [She] and [Defendant] start walking to the cave. *See* Min. Entry 10:42:40AM (Jul. 01, 2022).

4) [Defendant] started to rub the **coconut oil** in [her] pubic hair, and he started to rub the coconut oil like [her] inner thigh close to like the lips of [her] vagina, and then he started to rub the oil kind of like over [her] vagina … he began rubbing the oil more towards [her] arm pits … and at this point, as he is in [her] arm pits, he has gotten like on top of [her]… he asks [her] if [she] knew what *nuru* massage was. Um [she] said yes, [she] did not know what *nuru* massage was, at this point, [she] just said yes. [She] just didn't really know what was happening wanted to trust the situation, [she] felt uncomfortable, [She] just was not sure. So [she] said yes to the *nuru* massage, and he explained what it was. He said a *nuru* massage is when someone rubs oil on your body with their body and it's like friction and it's just like tantric. And so he starts like [her] legs, at this point are like open, [she's] lying on [her] back he starts to like rub his body on [her] and he starts to like move his face closer to like [her] vagina. And, at this point, is when he puts his mouth on [her] vagina and he starts like licking [her] … [she] starts to like pull away from him, and [she] told him "[she] has sexual trauma." And [she] told him this because [she] did not want the situation to create trauma sexually for [her]. *See* Min. Entry 11:27:10 – 11:30:00AM (Jul. 01, 2022).

[She] can feel his erection growing, and [she] tells him "[she] does not want to be penetrated." [She] said that to him. And [she] starts clenching her vagina muscles, like tightening [her] vagina cause [she] [does] not want him to penetrate [her] and [she] can feel him putting his penis on [her] vagina trying to penetrate [her] and [she] [feels] him inside of [her]. [She] [feels] him penetrate [her]. *See* Min. Entry 11:31:40 – 11:32:04AM (Jul. 01, 2022).

5) [She] told him "[she] has sexual trauma," and he said, **"This is good. Let the positive energy enter you. Let the negative energy leave your body. The ancestors want this. This is good."** *See* Min. Entry 11:30:04AM (Jul. 01, 2022).

At the evidentiary hearing on March 11, 2022, R.L.'s testimony revealed the following:

1) [Defendant] is a **suruhanu**; *See* Min. Entry 1:57:30PM (Mar. 11, 2022).

2) [Defendant] mentioned that a **bad spirit might be following [her]**. *See* Min. Entry 2:02:34PM (Mar. 11, 2022). [Defendant] said that he feels…he feels a **negative energy inside of [her]** and that's the reason why [she's] been going through a lot in life… *See* Min. Entry 2:03:29PM (Mar. 11, 2022).

3) [Defendant] asked if he could pick [her] up after he got off from work, at the Port. [She] does not recall the time… um. He came to [her] residence in Perez Acres. Parked in front of the bus stop. And um [she] had him pick [her] up because he said he has a drink, *amut*, for [her]…*See* Min. Entry 2:04:56 – 2:05:21PM (Mar. 11, 2022). [Defendant] handed [her] his **amut**, and he started driving. [She] drank it… [She] is not sure of the exact location, but [she] [does] know [she] remember[s] seeing a shack and a chain. He had to get out of the vehicle to undo the chain, and [she] heard the chain from the background, and [she] saw it. It was dark… He told [her] it was a **family ranch**. *See* Min. Entry 2:05:40 – 2:06:50PM (Mar. 11, 2022).

4) [She] was feeling dizzy…um [she] found [herself] like [she] lost balance. [She] was trying to sit up in the seat. But [she] couldn't control her balance at this point. Prosecutor: "Did you drink all the **amut** already at this time?" R.L.: "Yes." *See* Min. Entry 2:07:00 – 2:07:23PM (Mar. 11, 2022).

5) [She] remember[s] being in the **bed of his truck**… [She] couldn't walk. Um. He carried [her] to the bed of his truck. He laid [her] on the bed of his truck with [her] waste hanging off of the tailgate. And he, he undressed [her]. [She] felt him struggle to take [her] shorts off. Um. [She] told him to "stop" and he replied, "Don't worry *neni*, it's just me." [She] remember[s] a flash being in [her] face. [She] hit down the phone… *See* Min. Entry 2:07:50 – 2:09:02PM (Mar. 11, 2022). [She] remember[s] clenching [her] legs um trying to prevent entry into [her] body. And then [she] felt him enter [her]. [She] told him to "stop." He said, **"The ancestors want this. This is healing."** … [She] pushed him. Prosecutor: "What part of his body made entry into you?" R.L.: "His penis." Prosecutor: "What part of your body did he enter?" R.L.: "My vagina."… [She] remember[s] him saying, he said, "I'm almost done." And then, [she] just remember[s] not being able to push him off from [her]. *See* Min. Entry 2:09:35 – 2:11:02PM (Mar. 11, 2022).

Then at the evidentiary hearing on March 18, 2022, C.T.'s testimony revealed the following:

1) Prosecutor: "In the course of your um work as a massage therapist have you had contact with um the island's healers otherwise known as the *suruhanus* or the *yo amte*?" C.T.: "Yes." *See* Min. Entry 10:58:40AM (Mar. 18, 2022). [She] met [Defendant] first through a friend uhh when [she] first got back from massage therapy school uhh [they] went on a hike with him and eventually [she] came to work with him first because [her] son was being bothered by some spirits. And so [she] worked with him then first. And [her] son was then relieved from the spirits. And then [she] came across him again later when [she] was apprenticing under *Haya* Foundation. *See* Min. Entry 10:59:47 – 11:00:18AM (Mar. 18, 2022).

2) [Defendant] sensed that [she] had **pain around [her] chest and in [her] heart**. *See* Min. Entry 11:06:32AM (Mar. 18, 2022).

3) [She] went with [Defendant] down to **Tanguisson** under the understanding that **[she] was going to participate in a ceremony to help [her] connect to [her] ancestors** and to understand more of [her] purpose, especially as a healer. *See* Min. Entry 11:00:50 – 11:01:17AM (Mar. 18, 2022).

4) [Defendant] told [her] to lay down and he was going to massage [her] with the specific **oil** that he had made. *See* Min. Entry 11:07:32 – 11:07:32AM (Mar. 18, 2022).

5) [She] laid down. He massaged [her], head to toe. [She] was not comfortable because [she] was naked and [she] was lying down. But [she] was trusting in the fact that [she] was going to receive what [she] was told. He massaged [her], head to toe, came back to [her] genital areas, focused there. And at some point, he was on top of [her]. [She] closed her eyes throughout some of this because [she] wasn't comfortable and she was trying to be open to the healing work that was supposed to happen. *See* Min. Entry 11:07:40 – 11:08:28AM (Mar. 18, 2022). Prosecutor: "Going back to when you said you were trusting of the fact that you were going to receive what was told, what was it that you thought you would receive?" C.T.: **"I thought that umm, I thought that I would be more so connecting with my ancestors** through umm, more through conversation or uhh channeling in the sessions that I had seen him before." *See* Min. Entry 11:08:33 – 11:09:04AM (Mar. 18, 2022).

In its June 14, 2022, FFCL, this Court found that R.L. and C.T.'s testimony revealed the following similarities:

1) Knowing Defendant as a *suruhanu* or a spiritual healer;

2) Defendant telling Victim, R.L, and C.T. that they suffered from something;

3) Defendant isolating Victim, R.L. and C.T.,

4) Defendant using some sort of healing element (amot, oil); and

5) The alleged sexual assault or the acts leading thereto was for or related to the ancestors.

FFCL p. 16 (Jun. 14, 2022). After Victim testified, the Court observed some detailed and clarifying points related to the following areas of similarity: (2) telling Victim, R.L., and C.T. that they suffered from something; (3) isolating Victim, R.L., and C.T.; and (4) Defendant using some sort of healing element, worthy of discussion here. The Court's analysis does not change as it relates to the area of similarity indicated in (1) Knowing Defendant as a *suruhanu* or a spiritual healer.

First, the Court observes that Defendant told Victim, C.T., and R.L., something that would reasonably lead them to trust him as a *suruhanu*. In her testimony, Victim clarified that it was not Defendant that said that she "had a lot of sexual trauma," as the Court previously observed. *See* FFCL p.17 (Jun. 14, 2022). Instead, Victim's testimony revealed that she was the one who told Defendant that she suffered from "sexual trauma." *See* Min. Entry 11:29:47AM (Jul. 1, 2022). To the same point, however, Victim's testimony revealed that Defendant told [her] that she had a "warrior spirit," and a "*maga haga* energy." *See* Min. Entry 10:36:42AM (Jul. 01, 2022). The Court observes that the effect of Defendant telling Victim that she had a "warrior spirit," and a "*maga haga* energy," has the same effect of telling Victim something that would reasonably lead her to trust Defendant as a *suruhanu*. This is similar to C.T.'s testimony

that Defendant told her that he "sensed that [she] had **pain around [her] chest and in [her] heart.**" *See* Min. Entry 11:06:32AM (Mar. 18, 2022). This is also like R.L.'s testimony that "[Defendant] mentioned that a **bad spirit might be following [her]** and that he feels a **negative energy inside of [her].**" *See* Min. Entry 2:02:34PM (Mar. 11, 2022); Min. Entry 2:03:29PM (Mar. 11, 2022).

Second, the Court observes that Victim and C.T. are more similar than R.L as it relates to being isolated at Tanguisson. Here, Victim testified that she went to **Tanguisson to connect with the ancestors**. *See* Min. Entry 10:55:50AM; Min. Entry 11:00:10AM (Jul. 01, 2022). Similarly, C.T. testified that "[she] went with [Defendant] down to **Tanguisson** under the **understanding that [she] was going to participate in a ceremony to help [her] connect to [her] ancestors**. *See* Min. Entry 11:00:50 – 11:01:17AM (Mar. 18, 2022). However, R.T. distinguishably testified that the alleged sexual assault occurred in the bed of Defendant's truck at a **family ranch**. *See* Min. Entry 2:05:40 – 2:06:50PM (Mar. 11, 2022). Further, the Court recognizes Victim and C.T. went to Tanguisson intending to "connect with the ancestors," which is unlike R.L. who appeared was with the Defendant in the context of treatment for "the bad sprit inside her." While, the testimonies reveal that Victim, C.T., and R.L. were all alone with Defendant, the Court recognizes the dissimilar location of R.L.'s alleged assault occurred. As such, the Court finds that R.L. is distinguished in it relates to the location of the alleged assault.

Third, the Court observes that Victim and C.T. are more similar than R.L. as it relates to the healing element Defendant used. Victim and C.T. testified that Defendant rubbed **oil** on them. *See* Min. Entry 11:27:10 – 11:30:00AM (Jul. 01, 2022); Min. Entry 11:07:32 –

11:07:32AM (Mar. 18, 2022). Distinguishably, R.L. testified that Defendant gave her *amut*. *See* Min. Entry 2:07:00 – 2:07:23PM (Mar. 11, 2022).

Finally, the Court observes that Victim, C.T., and R.L., similarly testify that Defendant lead them to believe that the alleged assault was related to the "ancestors." Specifically, Victim testified that he said, Defendant told her **"This is good. Let the positive energy enter you. Let the negative energy leave your body. The ancestors want this. This is good."** *See* Min. Entry 11:30:04AM (Jul. 01, 2022). Similarly when asked, "What was it that you thought you would receive?" C.T. testified, **"I thought that umm, I thought that I would be more so *connecting* with my ancestors."** *See* Min. Entry 11:08:33 – 11:09:04AM (Mar. 18, 2022). R.L. also testified that during the alleged sexual assault, Defendant said, **"The ancestors want this. This is healing."** *See* Min. Entry 2:09:35 – 2:11:02PM (Mar. 11, 2022).

The Court finds that C.T.'s testimony satisfies the requisite preliminary finding by the preponderance of the evidence that Defendant engaged in prior acts of alleged sexual assault that are similar to the acts charged in the instant case. However, the Court does not yield the same conclusion as it relates to R.L.'s testimony as the location of the alleged sexual assault and the healing element used are distinguishable from that of Victim, and C.T.

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion as it relates to R.L., and **DENIES** Defendant's Motion as it relates to C.T.

**IT IS SO ORDERED** _____ JUL 20 2022 _____

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
___AG, Arriola Law___-

Date: 7/20/22 Time: 12:10 pm
Antonio J. Cruz
Deputy Clerk, Superior Court of Guam

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**